**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 23, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DANIEL JOE PRICE,

       Plaintiff - Appellant,

v.

JOHNNY PHILPOT, Sheriff; ROY
COLEMAN, Undersheriff; KENNETH
WILSON, Deputy; KELLY KARNES,
Deputy; CLINT JOHNSON, Agent;
FRANK LLOYD, Agent; GARY
PHILPOT, Chief of Police; BEAU
GABBERT, Sallisaw Police
Department; JOHN OWENS, Sallisaw
Police Department; DAVID
BETHANY, Sallisaw Police
Department; ROGER FULLER,
Muldrow Policy Department; CODY
HYDE, Oklahoma Highway Patrol
Department; and others known and
unknown,

       Defendants - Appellees,

and

RAYMOND MARTIN,

       Defendant.

No. 04-7121

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. CIV-02-451-P)**[*]

Daniel Joe Price, pro se.

Chris J. Collins and Stephen L. Geries, Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma; Kent R. McGuire and Kathryn D. Terry, Whitten Nelson McGuire Terry & Roselius, Oklahoma City, Oklahoma; Angela K. Martin, Oklahoma Attorney General's Office, Oklahoma City, Oklahoma, collectively for Defendants-Appellees.

Before **EBEL**, **McKAY** and **HENRY**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiff Daniel Joe Price ("Plaintiff" or "Price") brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by several state and local law enforcement officers (collectively "Defendants"). The district court dismissed all of Price's claims after applying Oklahoma's two-year statute of limitations, Heck v. Humphrey, 512 U.S. 477 (1994), and the Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51,

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

§ 153(B) (2000). We have jurisdiction under 28 U.S.C. § 1291. We AFFIRM in part, REVERSE in part, and REMAND.

## BACKGROUND

Price's complaint alleges that on June 14, 2000, several state and local law enforcement officers commenced an illegal search or "raid of violence" at his home. According to Price, this search involved officers stealing and destroying Price's personal property, including a dog, and officers using unnecessary force against Price. Before this court, Price complains that after he was shot at by officers during this "raid" he was forced to flee his home.

Three months later, on September 14, 2000, Price was found and arrested. Price alleges that four of the named Defendants physically assaulted him in the course of this arrest and some or all of these four Defendants also stole his personal property following arrest.

Ultimately, Price pled guilty to being a felon in possession of firearms and to assaulting or impeding a federal officer. United States v. Price, 50 F. App'x 968, 969 (10th Cir. 2002). While still incarcerated, Price filed this civil rights complaint in federal district court on June 18, 2002, alleging several constitutional violations arising from Defendants' actions on or about the dates of June 14, 2000, and September 14, 2000.

The named Defendants in this case proceeded before the district court in three groups and are identified herein as follows:

"*Sheriff Defendants*":  Johnny Philpot, Roy Coleman, Roger Fuller, Kenneth Wilson, Raymond Martin,[1] and Kelly Karnes,

"*State Defendants*":  Cody Hyde, Clint Johnson, and Frank Lloyd, and

"*Police Defendants*":  Gary Philpot, Beau Gabbert, John Owens, and David Bethany.

All of these Defendants, except Roger Fuller and Cody Hyde, are implicated in Price's June 14, 2000, search-related claims.  Four Defendants are implicated in Price's September 14, 2000, arrest-related claims:  Johnny Philpot, Roy Coleman, Roger Fuller, and Cody Hyde.

Upon motions to dismiss from the State and Police Defendants, the district court held that a two-year statute of limitations applied to bar Price's "claims concerning his alleged injuries resulting from the search on June 14, 2000" because his complaint was filed with the district court on June 18, 2002—outside the two-year limitations period.  Next, the court said Price's separate claim for damages based on the unconstitutionality of "the actual search of his property" was premature under Heck v. Humphrey, 512 U.S. 477 (1994).  Finally, the court treated Price's claim that Hyde stole Price's property upon arrest as a state tort

---

[1]The district court noted that Raymond Martin has never been served in this lawsuit.  Accordingly, he has not participated in this appeal.

action and determined it was barred because Price had not complied with the Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, § 153(B) (2000). In its conclusion, the court expressly stated that all claims against these Defendants were dismissed.

The Sheriff Defendants then moved to adopt the State and Police Defendants' motion to dismiss and asked that the court's order of dismissal be "clarified" to dismiss all claims against the Sheriff Defendants as well. In a minute order approximately a year later, the district court granted the Sheriff Defendants' motion and modified its original dismissal order to expressly include dismissal of the Sheriff Defendants. That same day, the court denied Price's pending motion to reconsider.

This pro se appeal followed. We take jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM in part, REVERSE in part, and REMAND.

## DISCUSSION

On appeal, Price raises three main issues. Because Price proceeds pro se, we liberally construe his pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). First, he argues that the district court erred in determining that his claims were barred by the applicable two-year statute of limitations because either (1) the accrual date is not June 14, 2000, or (2) the prison mailbox rule applies to make his complaint timely. Second, Price claims that the district court improperly

converted Defendants' motions to dismiss to motions for summary judgment without the necessary notice to Price. Finally, Price asserts that the district court abused its discretion by denying Price's motion to reconsider. Before this court, Price does not challenge the district court's application of Heck v. Humphrey or the application of OGTCA to Price's arrest-related property claims.

## A.    STATUTE OF LIMITATIONS

In a civil rights action brought under 42 U.S.C. § 1983, we apply the applicable state statute of limitations. Abbitt v. Franklin, 731 F.2d 661, 663 (10th Cir. 1984) (en banc). In this case, Oklahoma's two-year statute of limitations applies. See id.

Price argues that the district court erred by setting a single accrual date of June 14, 2000, for the vast majority of his claims. Specifically, Price claims some or all of his claims arose later than the district court determined, thereby making his filing on June 18, 2002, timely as to those claims. He further asserts that, even if the court was correct that the accrual date for some or all of his claims was June 14, 2000, then the prison mailbox rule should apply to make Price's complaint timely filed on June 14, 2002.

### 1.    Accrual of Price's claims

When a claim accrues, and thus when the limitations period begins to run, is a question of federal law. Smith v. City of Enid, 149 F.3d 1151, 1154 (10th

Cir. 1998) "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Baker v. Bd. of Regents, 991 F.2d 628, 632 (10th Cir. 1993). Indeed, "it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." Id.; see also Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991) ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur.").

### a. Arrest-related claims[2]

Price's complaint makes clear he is asserting separate claims arising from both the June 14, 2000, search of his home and from his September 14, 2000, arrest. Indeed, Price emphasizes this on appeal by noting that "[t]he complaint outlines two different dates, one the date of the search (i.e., June 14, 2000) and two, the date of arrest (i.e., September 14, 2000)."

Thus, Price's pleadings argue that his excessive force upon arrest claims are separate from his search-related claims and accrued instead on the day of his arrest, September 14, 2000. Specifically, Price asserts that "his physical beating

---

[2]As noted earlier, Price did not appeal the court's conclusion that OGTCA barred his property-related claims arising from his September 14, 2000, arrest. Therefore, that issue is not before us for our consideration, and we make no comment on the propriety of OGTCA's bar as applied to these claims. Instead, we consider only Price's claim of physical abuse at arrest.

claim survives the statutory bar where occurring moments <u>after</u> his September 14, 2000, arrest."

We agree. The initiation of the June 14 search did not put Price on notice that he would have an excessive force upon arrest claim arising three months later. It is clear that Price is making a separate constitutional claim of abuse, dealing with a specific subset of named Defendants, occurring at his September 14, 2000 arrest. The district court erroneously lumped all of Price's abuse claims into a single claim arising upon the initiation of the search on June 14, 2000. Therefore, we reverse and remand Price's arrest-related excessive force claims for further proceedings.[3]

### b. Search-related claims

Next, Price argues before this court that even his search-related claims accrued after June 14, 2000, because (a) Price fled the scene and was unaware of the extent of the violations resulting from the unlawful search until after that date; and (b) the search itself was not completed for several days.

---

[3]The applicability of <u>Heck v. Humphrey</u>'s bar is not before us for consideration as to these arrest-related excessive force claims. However, it seems unlikely <u>Heck</u> should apply to these claims. <u>See</u> <u>Beck v. City of Muskogee Police Dep't</u>, 195 F.3d 553, 558 (10th Cir. 1999) (holding that the accrual of claims relating to illegal arrests is generally not affected by <u>Heck</u> "because ultimate success on them would not necessarily question the validity of a conviction").

We disagree. The law requires only that the claimant "knows or has reason to know of the injury" before the limitations period begins to run. Baker, 991 F.2d at 632. Indeed, the claimant need not even know "all of the evidence" before the cause of action accrues. Id.

Price may not have known the full extent of his property-related injuries on June 14, 2000, when the search was initiated; however, in his complaint, he acknowledges that he was present when Defendants arrived and allegedly began shooting. Even if Price's own flight may have prevented him from immediately surveying the extent of his property loss, and even if we assume the search did occur over several days, Price certainly "had reason to know" that the events giving rise to this action were occurring as early as June 14, 2000. Therefore, we agree with the district court's conclusion that June 14, 2000, is the applicable accrual date for Price's search-related claims.

**2.    Prison mailbox rule**

Alternatively, Price contends that, even if his search-related claims did accrue on June 14, 2000, he put his complaint in the prison mail system on June 14, 2000, and therefore his complaint was timely under the prison mailbox rule. Price's complaint is signed with an indication that it was "[r]espectfully submitted on this 14th day of June, 2002." It also includes a "certificate of mailing" that indicates "Plaintiff certify [sic] herein that this suit was placed in the institutional

mails on this 14th day of June, 2002, with the appropriate postage attached and addressed to this Honorable Court."

### a. Prison mailbox rule in prisoner 42 U.S.C. § 1983 filings

The prison mailbox rule, as articulated by the Supreme Court in <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988), holds that a <u>pro se</u> prisoner's notice of appeal will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents. <u>See also</u> Fed. R. App. P. 4(c)(1) (incorporating mailbox rule for an inmate's "notice of appeal in either a civil or a criminal case").

We have already extended this mailbox rule beyond the notice of appeal context of <u>Houston</u> and have applied it to measure the timeliness of a federal inmate's initial filing of a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, <u>United States v. Gray</u>, 182 F.3d 762, 764, 765 n.4 (10th Cir. 1999), and to a state prisoner's filing of a habeas petition under 28 U.S.C. § 2254. <u>Marsh v. Soares</u>, 223 F.3d 1217, 1218 & n.1 (10th Cir. 2000).[4] In addition, the Federal Rules of Appellate Procedure incorporate the mailbox rule for any "paper required or permitted to be filed in a court of appeals." Fed. R. App. P. 25(a)(1), (a)(2)(C).

---

[4]Without discussion, we have also applied the prison mailbox rule to a prison inmate's objections to a magistrate's report in a civil rights case. <u>Dunn v. White</u>, 880 F.2d 1188, 1190 (10th Cir. 1989) (per curiam).

Although we have not addressed directly the question presented by this appeal, the clear consensus among the circuits is that the mailbox rule also applies to inmate 42 U.S.C. § 1983 filings. See, e.g., Sulik v. Taney County, 316 F.3d 813, 814-15 (8th Cir. 2003) (collecting cases); Casanova v. Dubois, 304 F.3d 75, 79 & n.5 (1st Cir. 2002). We see no reason to depart from this settled precedent, and hold that the prison mailbox rule articulated in Houston applies equally to an inmate's filing of a civil rights complaint.[5]

### b. Substance and analysis of prison mailbox rule

In the notice of appeal context, Federal Rule of Appellate Procedure 4 has incorporated Houston's judicially created rule, and now provides:

> If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule.

---

[5]We note, however, that this holding is not limitless. The Court's decision in Houston was based in part on the fact that the rules and statutory deadline for filing a notice of appeal in place at that time failed to "set[] forth criteria for determining the moment at which the 'filing' has occurred." 487 U.S. at 272–73. This left open the possibility that "in the unique circumstances of a pro se prisoner" one could interpret "filing" to mean "that a notice of appeal is 'filed' . . . at the moment it is delivered to prison officials for forwarding to the clerk of the district court." Id. at 272.

However, where the "service" or "filing" language in an applicable statute or rule establishes a specific regime to the contrary, Houston may not apply. See Longenette v. Krusing, 322 F.3d 758, 762-63 (3d Cir. 2003) (collecting cases where appellate courts limited "Houston's narrow holding" to questions of service decided in the "absence of a clear statutory or regulatory scheme").

> Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Fed. R. App. P. 4(c)(1). This mirrors precisely the requirements for filing other papers with the appellate courts, see id. at Rule 25(c), and for filing papers related to habeas petitions under recent versions of the habeas rules, see Rule 3(d), Rules Governing § 2254 Cases; Rule 3(d), Rules Governing § 2255 Cases.

Given this clear desire for across-the-board consistency, and the obvious practical reasons for imposing a uniform rule to all inmate filings, we apply the same requirements to Price's § 1983 complaint that we have applied to other inmate filings with the benefit of a mailbox rule in these other contexts. See Grady v. United States, 269 F.3d 913, 916 (8th Cir. 2001); Gray, 182 F.3d at 765 n.4 (applying rule "equally" to habeas motions).

That is, an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having "filed" that complaint on the date it is given to prison authorities for mailing to the court. See Houston, 487 U.S. at 276. However, the inmate must attest that such a timely filing was made and has the burden of proof on this issue. See United States v. Ceballos-Martinez, 387 F.3d 1140, 1143 (10th Cir.), cert. denied, 125 S.Ct. 624 (2004).

An inmate can establish the date on which he or she gave the papers to be filed with the court to a prison official in one of two ways. Id. at 1144-45. First,

- 12 -

"if the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule." Id. at 1144; see also United States v. Leonard, 937 F.2d 494, 495 (10th Cir. 1991) (refusing to give prisoner the benefit of Houston's filing rule where inmate "posted a notice of appeal in the regular prison mail" because Houston relied on a "prison's legal mail procedures, by which mail is logged in at the time and date it is received [to] provide a 'bright line rule' for determining the date of a pro se prisoner's 'filing'"); Gray, 182 F.3d at 765 (explaining that "legal mail systems automatically log in all legal mail through relatively simple, straightforward procedures").

The second mechanism for establishing a filing date for purposes of the mailbox rule must be used if the inmate does not have access to a legal mail system—or if the existing legal mail system is inadequate to satisfy the mailbox rule. In either of these circumstances, the "mandatory method by which a prisoner . . . proves compliance with the mailbox rule" is to "submit a declaration [in compliance with 28 U.S.C. § 1746] or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid."[6] Ceballos-Martinez, 387 F.3d at 1145; see also Gray, 182 F.3d at 766

---

[6]A declaration in compliance with 28 U.S.C. § 1746 includes a "declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated." 28 U.S.C. § 1746. In describing the requirements of a § 1746 declaration, we have

(continued...)

(giving benefit of the mailbox rule to inmate who had no legal mail system available to him but who submitted papers for mailing to prison authorities with a certificate of service containing a declaration in compliance with 28 U.S.C. § 1746 that he did so on a date before the filing deadline had run); United States v. Smith, 182 F.3d 733, 735 n.1 (10th Cir. 1999) (refusing to apply mailbox rule to pro se inmate's notice of appeal because declaration of timely filing did not state that first-class postage had been prepaid).

A word of caution: although an inmate seeking to take advantage of the mailbox rule must use the prison's legal mail tracking system where one is in place, it would be unwise to rely solely on such a system. If an inmate relying on a prison legal mail system later learns that the prison's tracking system is inadequate to satisfy the mailbox rule, it would be best if an alternative notarized statement or perjury declaration establishing timely filing were already in place.

---

[6](...continued)
consistently emphasized that the writer must "subscribe" the statement "as true under penalty of perjury." Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d 567, 570 n.1 (10th Cir. 1994); accord Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997) (permitting statements "made under penalty of perjury"); Hall v. Furlong, 77 F.3d 361, 363 n.2 (10th Cir. 1996) (same); Thomas v. U. S. Dep't of Energy, 719 F.2d 342, 345 n.3 (10th Cir. 1983) (accepting "unsworn declarations given under penalty of perjury").
The sample declaration provided by § 1746 for statements executed within the United States would have the writer state: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746.

Therefore, although inmates with an available legal mail system should assert in their filings that they did use that legal system, they would be wise, at least for the sake of thoroughness, to also include a notarized statement or perjury declaration attesting to the date of transmission and stating that postage has been prepaid.[7]

To summarize, an inmate must establish timely filing under the mailbox rule by either (1) alleging and proving that he or she made timely use of the prison's legal mail system if a satisfactory system is available, or (2) if a legal system is not available, then by timely use of the prison's regular mail system in combination with a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that postage was prepaid. Ceballos-Martinez, 387 F.3d at 1144-45.

---

[7]Moreover, many circuits have interpreted Fed. R. App. P. 4 to *require* a notarized statement or a declaration under penalty of perjury in *every* case, even where an inmate claims to have used the prison legal mail system. See 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3950.12 (3d ed. 2005 Supp.). Although dicta in Ceballos-Martinez suggests that in this Circuit a notarized statement or perjury declaration is required only in the case of an inmate who does not have access to a legal mail system, 387 F.3d at 1145, a future case may hold otherwise. See Wright, Miller, & Cooper, Federal Practice § 3950.12 at n.19 (calling our interpretation in Ceballos-Martinez "questionable"). We need not try to resolve that issue here, since any statements to that effect in this case would also be dicta. However, we strongly suggest as a matter of prudence that all pro se prison filings seeking the benefit of the mailbox rule include a notarized statement or penalty declaration as required under § 1746.

Here, Price's complaint fails under either test. First, he states simply that "this suit was placed in the institutional mails on this 14th day of June, 2002." If a legal mail system were available, Price would be required to use it to obtain the benefit of the mailbox rule. See Leonard, 937 F.2d at 495. However, Price has failed to allege, or timely establish, that he did so. Alleging only that he used "the institutional mails" is insufficient to connote use of the "legal mail system."[8] Furthermore, once the timeliness of Price's complaint became an issue, Price failed to document his use of the legal mail system before the district court reached its decision on the merits. Therefore, Price has not met his burden to establish his entitlement to the benefit of the mailbox rule under this test.

Additionally, Price did not argue below that there was no legal mail system available to him. However, even if that were the case, then Price still failed to establish his compliance with the mailbox rule. If there were no legal mail system available, Price would have to prove his timely filing by executing a notarized statement or a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 setting forth the date of his deposit in the regular mail system and stating that he included pre-paid postage. See Ceballos-Martinez, 387 F.3d at

---

[8]Cf. Gray, 182 F.3d at 764, 766 (giving inmate who stated he placed motion "in the institution's internal mailbox" benefit of mailbox rule only because (1) there was no legal mail system available and (2) certificate of service included a declaration in compliance with § 1746).

1145. Here, Price's certificate of service states only that he "respectfully submitted" his complaint on June 14, 2002. He also "certif[ies] . . . that this suit was placed in the institutional mails on this 14th day of June, 2002, with the appropriate postage attached." However, there is no "under penalty of perjury" language as specifically required by 18 U.S.C. § 1746.

Therefore, Price has not sufficiently alleged, let alone established, his compliance with the mailbox rule under either scenario. Accordingly, we conclude the district court was correct in its determination that Price is not entitled to the benefit of the mailbox rule and his complaint was therefore "filed" when it was received by the court on June 18, 2002. As such, his search-related claims were untimely and we affirm the district court in this regard.

## B. SUMMARY JUDGMENT CONVERSION

Next, Price claims that the district court improperly converted Defendants' motions to dismiss under Rule 12(b)(6) to motions for summary judgment under Rule 56 without the necessary notice to Price. Price is correct as a matter of law that when a district court relies on material from outside the pleadings, the court converts the motion to dismiss into a motion for summary judgment. Lamb v. Rizzo, 391 F.3d 1133, 1136 (10th Cir. 2004). And when such a conversion occurs, the district court "must provide the parties with notice so that all factual

allegations may be met with countervailing evidence." Burnham v. Humphrey

Hospitality Reit Trust, Inc., 403 F.3d 709, 713 (10th Cir. 2005).

However, here, it seems clear the district court did not convert Defendants'

motions to one for summary judgment. Although Price is correct that the parties

were conducting discovery at the time of the court's decision, the district court

expressly indicated that "[t]he court has before it for consideration plaintiff's

complaint, the defendant's motions, and plaintiff's responses." Therefore, Price's

complaints about lack of notice of such conversion are without merit.

## C.    MOTION TO RECONSIDER

Finally, Price asserts that the district court abused its discretion in denying

Price's motion to reconsider. Price's primary argument is that the court should

have granted his motion to reconsider to provide him an opportunity to present

evidence on the statute of limitations issues and, specifically, to submit an

affidavit establishing his compliance with the mailbox rule. However, regardless

of whether this claim is treated as a motion to reconsider under Rule 59, Rule

60(b), or as an interlocutory motion before any final judgment, we do not find the

court abused its discretion in this case.[9]

---

[9]Generally, a "motion for reconsideration, not recognized by the Federal Rules of Civil Procedure, Clough v. Rush, 959 F.2d 182, 186 n.4 (10th Cir. 1992), may be construed in one of two ways: if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under

(continued...)

First, as to evidence pertaining to the accrual date, Plaintiff's complaint makes clear on its face that the search commenced on June 14, 2000, and that Price was aware of the initiation of the search at that time. Any subsequent evidence would not change this admission that Price "had reason to know" of any violations as of that date.

Second, Price attempted to submit a proper "under penalty of perjury" declaration asserting that he actually filed his complaint in the prison legal mail box, rather than just the normal institutional mail box. This was also within the district court's discretion to deny. In <u>Ceballos-Martinez</u>, we did note that Rule 4 does not require the attestation to be filed at any particular time; however, we said it must be filed before the notice of appeal issue is resolved. 387 F.3d at 1144 n.4. Indeed, the Eighth Circuit case we cited approvingly in <u>Ceballos-Martinez</u>

---

[9](...continued)
Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." <u>Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.</u>, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). In addition, "every order short of a final decree is subject to reopening at the discretion of the district judge." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 12 (1983); <u>see also</u> Fed. R. Civ. P. 54(b).

The nature of this particular motion to reconsider is difficult to decipher given the unique procedural posture of this case. However, absent any issue as to the timeliness of this appeal—because this appeal would have been timely under either construction—we need not sort it out. <u>See</u> <u>Hawkins v. Evans</u>, 64 F.3d 543, 546 (10th Cir. 1995) (explaining that the effect on timeliness of appeal is the significant difference between motions under Rules 59 and 60). Regardless of the precise type of motion here, our standard of review is abuse of discretion. <u>See</u> <u>Computerized Thermal Imaging</u>, 312 F.3d at 1296 n.3.

for this point clarifies that a court may, in its discretion, elect not to consider a delayed affidavit or may discount it as less trustworthy.  <u>Grady v. United States</u>, 269 F.3d 913, 918 (8th Cir. 2001).  Here, the district court denied Price's motion to reconsider its dismissal order, which included the attached additional affidavit, because "[a]lthough the defendants raised the statute of limitations defense in their motion to dismiss, plaintiff did not properly address it in his pleadings."  Therefore, the court declined to permit Price "to present evidence he simply failed to file in a timely manner before disposition of this case."

Upon our review, we cannot say it was an abuse of discretion to deny Price a second opportunity to correct this filing error.   Therefore, we affirm the district court's denial of Price's motion to reconsider.

## CONCLUSION

After carefully reviewing these issues, we conclude that the district court erred by implicitly setting a single accrual date for Price's separate arrest- and search-related claims.  Therefore, we REVERSE and REMAND Price's remaining arrest-related claim of physical abuse and excessive force, which was filed within the two-year statute of limitations from the date it occurred on September 14,

2000, for proceedings consistent with this decision.  In all other respects, we

AFFIRM the district court.[10]

---

[10]We have also considered Price's opposed Motion Requesting Court to Take Judicial Notice of a newspaper article, which is presented as "newly discovered evidence" concerning Defendant Kelly Karnes, that Price now argues should toll Price's statute of limitations period.  We have carefully reviewed this motion and all of the other motions and responses it has generated.  We DENY Price's initial Motion and therefore also DENY any related motions as moot.