FILED
United States Court of Appeals
Tenth Circuit

December 31, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT H. DIXON,

      Petitioner - Appellant,

v.

STEVE HARTLEY, Warden; THE
ATTORNEY GENERAL OF THE
STATE OF COLORADO,

      Respondents - Appellees.

No. 14-1406
(D. Colorado)
(D.C. No. 1:13-CV-02174-MSK)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.

      Pro se state prisoner Robert Dixon requests a certificate of appealability (COA)

after the federal district court denied his application for relief under 28 U.S.C. § 2254.

*See* 28 U.S.C. § 2253(c)(1)(A) (requiring COA to appeal denial of relief under § 2254).

Because there is no room for debate over the district court's ruling, we deny a COA and

dismiss the appeal.

## I.    BACKGROUND

Mr. Dixon was convicted in 2007 of first-degree sexual assault in Denver County District Court, adjudicated a habitual offender, and sentenced to 48 years in prison. He unsuccessfully pursued a direct appeal and postconviction relief. On January 24, 2014, he filed an amended application under § 2254 in United States District Court for the District Court of Colorado. On April 14 the district court dismissed almost all Mr. Dixon's claims as procedurally barred. *See Dixon v. Hartley*, No. 13-cv-02174-MSK, 2014 WL 1466610, at \*13 (D. Colo. Apr. 14, 2014). On August 28 the district court denied Mr. Dixon's remaining claims on the merits and declined to issue a COA. *See Dixon*, 2014 WL 4265832, at \*5–10.

## II.    ANALYSIS

### A.    Timeliness

We first address the timeliness of Mr. Dixon's notice of appeal. A notice of appeal in a civil case typically "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). Here, the district court entered final judgment on August 28, but Mr. Dixon's notice of appeal was not received by the district clerk until Tuesday, September 30, one day late.

Under normal circumstances this would end the appeal. But prisoners may benefit from what our court has referred to as the "prison mailbox rule." *Price v. Philpot*, 420 F.3d 1158, 1163 (10th Cir. 2005). It provides as follows:

2

> If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. *If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule.* Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Fed. R. App. P. 4(c)(1) (emphasis added). Therefore, as we have said:

> [A]n inmate must establish timely filing under the mailbox rule by either (1) alleging and proving that he or she made timely use of the prison's legal mail system if a satisfactory system is available, or (2) if a legal system is not available, then by timely use of the prison's regular mail system in combination with a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that postage was prepaid.

*Price*, 420 F.3d at 1166. Mr. Dixon has not submitted a notarized statement or a declaration, nor has he attested that postage was prepaid. Therefore he must prevail, if at all, by alleging and proving use of the prison's legal mail system.

Mr. Dixon states that he "was not able to send his motion out until [Sunday] the 28th of September which was placed into Buena Vista Correctional Complex mail log one day before his deadline . . . ." Aplt.'s response to November 21, 2014, show cause order (Aplt.'s response) at 1–2, *Dixon v. Hartley*, No. 14-1406 (10th Cir. Dec. 4, 2014). His computation is correct. The thirtieth day fell on Saturday, September 27, meaning he had until Monday, September 29, to file a notice of appeal. *See* Fed. R. App. P. 26(a)(1)(C). Mr. Dixon has submitted an "AR Form 300-38A," titled "Outgoing Restricted Inspection Mail Log." Aplt.'s response at 3 (full capitalization omitted). This

3

appears to be a handwritten log of mail sent by various inmates. One line states that Robert Dixon mailed something to the U.S. Court of Appeals at 1823 Stout Street, Denver, Colorado, on Sunday, September 28, 2014. Because his notice of appeal arrived on Tuesday the 30th, it must have been mailed at least by the deadline, Monday the 29th.

Construing Mr. Dixon's filings liberally, *see Price*, 420 F.3d at 1162, we find that he has adequately shown that he made timely use of the prison's legal mail system. Although he states only that his motion "was placed into Bueno Vista Correctional Complex mail log," Aplt.'s response at 1–2; *cf. Price*, 420 F.3d at 1166 (not enough for prisoner to allege only that "this suit was placed in the institutional mails" (internal quotation marks omitted)), that statement should be viewed in conjunction with the attached mail log. That log appears to be a product of the prison's legal mail system. *See* Fed. R. App. P. 4 advisory committee's note, 1998 Amendments Subdivision (c). The log lists the "date received" and "date mailed" of each item, the prisoner who submitted the item, and the name and badge number of the prison official who handled each item. Aplt.'s response at 3 (capitalization omitted). Further, the title of the form is "Outgoing *Restricted Inspection* Mail Log," *id.* (emphasis added and full capitalization omitted), suggesting that the items are legally sensitive. *Cf. Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (prison officials may not handle inmates' mail in way that interferes with right to counsel or access to courts). Mr. Dixon's notice of appeal was timely filed under the prison mailbox rule.

4

**B.** **Mr. Dixon's Claims**

We turn now to the claims for which Mr. Dixon requests a COA. A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.* If the application was denied on procedural grounds, the applicant faces a double hurdle. Not only must the applicant make a substantial showing of the denial of a constitutional right, but he must also show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law,

5

as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Relief is provided under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted). Thus, a federal court may not issue a habeas writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See id.* Rather, that application must have been unreasonable. Therefore, for those of Mr. Dixon's claims that the state courts adjudicated on the merits, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

### 1. Procedurally Barred Claims

Most of Mr. Dixon's claims are procedurally barred. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1). If

6

the prisoner has not exhausted a claim, we will find a procedural default if the "unexhausted claim . . . would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002).

In its order of April 14, 2014, the district court organized Mr. Dixon's many claims into five main claims, with multiple subclaims in each, and dismissed most of the subclaims as procedurally barred. *See Dixon*, 2014 WL 1466610, at *2–3, *13. We follow the district court's numbering. The subclaims dismissed by the district court were either not exhausted because they were not presented at all to the state courts on direct appeal or in postconviction proceedings and would now be barred under Colorado law, *see id.* at *5 (subclaims 1(a), 1(c), 1(d)(i), 1(d)(ii), 1(e)(ii), and 1(e)(iii)); *id.* at *8 (subclaims 2(b), 2(d)(i), 2(e), and 2(g)), or were not presented properly and are likewise procedurally barred, *see id.* at *6 (subclaim 1(d)(iii)); *id.* at *8 (subclaim 2(c)(ii), insofar as it argues a violation of Mr. Dixon's right to confront witnesses); *id.* at *8–9 (subclaims 2(a), 2(c)(i), and 2(d)(ii)); *id.* at *9–11 (claims 3, 4, and 5, related to ineffective assistance of counsel).

Mr. Dixon can overcome a procedural bar if he can show "cause and prejudice or a fundamental miscarriage of justice." *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007) (internal quotation marks omitted). A prisoner may establish a fundamental miscarriage of justice by showing actual innocence, *see Schlup v. Delo*, 513 U.S. 298, 314–15 (1995), which Mr. Dixon claims. But he must support that claim "with new

7

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Mr. Dixon has presented nothing new, so his actual-innocence argument cannot lift the procedural bar.

A more complicated question is whether Mr. Dixon has shown cause to excuse the procedural default of his claims of ineffective assistance of counsel (IAC). According to the district court (again, Mr. Dixon does not dispute the district court's description of his legal proceedings), the postconviction state trial court addressed Mr. Dixon's IAC claims on the merits in a detailed order. *See Dixon*, 2014 WL 1466610, at *10. On Mr. Dixon's postconviction appeal, however, the Colorado Court of Appeals refused to consider his IAC claims, ruling that they were underdeveloped or belatedly raised in his reply brief. *See id.* at *10–11. The district court therefore held that they were procedurally defaulted. *See id.* at *11.

Mr. Dixon argued in the district court that he had shown excusable cause for his procedural default because he was without counsel during his state postconviction proceedings. Even construing Mr. Dixon's request for a COA liberally, we doubt that he has renewed that argument. Regardless, the argument is unavailing. We recognize that when postconviction proceedings provide the first opportunity for a prisoner to raise an IAC claim, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012); *see also Trevino v. Thaler*, 133

S. Ct. 1911, 1921 (2013). This is because the postconviction trial court will be the prisoner's first opportunity to present his IAC claim, so he may need effective counsel to ensure that some court adjudicates the merits of that claim. *See Martinez*, 132 S. Ct. at 1317. But Mr. Dixon raises no argument that his IAC claims were not adequately addressed by the Colorado district court.

And once an issue has been properly considered in postconviction proceedings at the trial-court level, a later procedural default cannot be excused by ineffective assistance of counsel. "While counsel's errors in these [additional] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 1316. Here, Mr. Dixon's IAC claim was addressed on the merits by the postconviction trial court. It was only on appeal that his denial of counsel potentially resulted in a procedural bar to further pursuit of his IAC claims. He can demand no more than what he received: a proceeding in which his "claims [were] addressed by the state habeas trial court." *Id.*; *see id.* at 1319 (noting, with apparent approval, Colorado's screening procedure for collateral attacks).

### 2. Preserved Claims

Only four of Mr. Dixon's subclaims survive: 1(b)(i), 1(b)(ii), 1(e)(1), and 1(f).[*] We address each in turn.

---

[*] Except for including it among the other subclaims dismissed, the district court did not address subclaim 2(f), which alleged that the trial court refused to appoint new counsel

In subclaims 1(b)(i) and 1(b)(ii), Mr. Dixon contends that his right to a fair trial was violated when the Sexual Assault Nurse Examiner (SANE) who examined the rape victim (i) changed her testimony in the second state trial by exaggerating the severity of her medical findings, and (ii) altered a diagram used in the first trial to show more injuries to the victim. As described by the district court, the Colorado Court of Appeals on direct appeal found no factual basis for Mr. Dixon's allegations. *See Dixon*, 2014 WL 4265832, at *5–6. We presume the state court's fact findings to be correct, and Mr. Dixon has not rebutted that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). We deny a COA on subclaims 1(b)(i) and 1(b)(ii).

In subclaim 1(e)(i), Mr. Dixon contends that his right to a fair trial was violated when the prosecutor exaggerated the SANE's testimony about the victim's injuries, once in opening argument and again in closing argument. The Colorado Court of Appeals held that "'[a]lthough the prosecutors' statements about the evidence were not entirely accurate, they were mentioned only briefly and did not severely embellish the SANE nurse's testimony. As a whole, the statements did not deprive [Mr. Dixon] of his right to

_____

despite Mr. Dixon's many complaints about his attorney's refusal to listen to him or let him participate in his own defense. *See Dixon*, 2014 WL 1466610, at *2, *8–9, *13. Mr. Dixon does not raise this issue in his request for a COA, however, so we consider it waived. *See United States v. Springfield*, 337 F.3d 1175, 1178 (10th Cir. 2003) (waiver when prisoner failed to raise issue in either his request for a COA or his merits brief). Also, the district court denied on the merits the portion of subclaim 2(c)(ii) in which Mr. Dixon argued that he was deprived of his constitutional right to present a defense when the state trial court excluded evidence that the victim had had sex with her boyfriend 24–26 hours before the rape. *See Dixon*, 2014 WL 4265832, at *8. Mr. Dixon does not raise this claim in his request for a COA, so we consider it waived as well.

a fair trial.'" *Dixon*, 2014 WL 4265832, at *7 (quoting *People v. Dixon*, No. 07CAL1158, slip op at 4 (Colo. App. Sept. 10, 2009) (unpublished decision)). There is no error here. "[A] prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam) (internal quotation marks omitted), and the Colorado Court of Appeals did not unreasonably apply federal law in ruling that there was no denial of due process here. We deny a COA on subclaim 1(e)(i).

Finally, subclaim 1(f) raises cumulative error. But the only error properly presented to us is that raised in subclaim 1(e)(i), and a claim of only *one* error cannot be the basis for *cumulative* error. *See United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009). We deny a COA on subclaim 1(f).

## III.  CONCLUSION

The request for a certificate of appealability is DENIED.

Mr. Dixon also moves to proceed *in forma pauperis.* Because his request for a COA lacks a good-faith basis, the motion is DENIED. *See United States v. Harper*, 545 F.3d 1230, 1234 (10th Cir. 2008).

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge


11