FILED
United States Court of Appeals
Tenth Circuit

January 9, 2018

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

WAYNE GLASSER,

    Plaintiff - Appellant

v.

CAROL KING, RN; MICHAEL WALSH,
PA,

    Defendants - Appellees,

and

MICHAEL HANSA, Deceased, through
surviving spouse and successor,
Weera-Anong Hansa; JAMES HARDING,

    Defendants.

No. 17-1124
(D.C. No. 1:12-CV-00624-WYD-CBS)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

    After suffering delays in treatment for a heart attack while incarcerated,

Colorado inmate Wayne Glasser sued prison nurse Carol King and physician's

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

assistant Michael Walsh.  Among other rulings, the district court awarded King and Walsh immunity on Glasser's state-law claims and denied Glasser leave to file a third amended complaint adding new defendants.  Proceeding pro se, Glasser now appeals from those decisions.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

On the morning of March 26, 2010, with his exercise period ending, Glasser pushed to complete a five-mile run in the yard at the Fremont Correctional Facility.  As the facility count began at 11:00 am, he complained to correctional officers Arthur Aranda and Jennifer Hansen that he wasn't feeling very well.  But he told Hansen that he thought he could wait until after the count, and asked her to come back and check on him when she finished.  During the count, Hansen and Aranda, along with a third officer, Jeri Aultman, returned to Glasser's cell.  Glasser told them about his symptoms, including shortness of breath, dizziness, and chest pain, and that he thought he might be having a heart attack.

At Glasser's request, Hansen called the medical clinic.  King was working at the front desk.  She understood the prison's policy to be that offenders were not to report to the clinic during count except in an emergency.  It appears that Hansen didn't tell King that Glasser was reporting chest pain.  Based on what Hansen reported, including that Glasser had been working out, King told Hansen to have Glasser rest and drink fluids and to send him to the clinic after the count had cleared, unless his condition worsened.

2

As the count progressed, Glasser told Hansen he wanted to self-declare an emergency. Hansen again called the clinic, reporting that Glasser had asked to come to the clinic. King asked if Glasser's symptoms had worsened. Upon being told that they weren't better, but they weren't worse, King repeated that Glasser should wait to be seen after the count.

The count finished around noon, and Glasser made his way to the clinic. He identified himself and said he thought he was having a heart attack. King directed him to take a seat in the waiting room. He waited for approximately twenty minutes before a nurse conducted an initial assessment, including an EKG, and notified Walsh that he should attend to Glasser. Walsh reviewed the EKG and administered some initial treatment including oxygen, aspirin, and nitroglycerin. He decided that Glasser needed to be sent out of the prison for treatment on an emergency basis. But it took some time to assemble a transport team and to prepare Glasser to leave. The ambulance arrived at 1:56 pm and departed at 2:19 pm.

As it turned out, Glasser had suffered a myocardial infarction and allegedly was left with permanent, irreversible damage to his heart due to delay in treatment. He sued numerous persons, including King and Walsh, but not including Hansen, Aranda, or Aultman. As to King and Walsh, he asserted a claim for a violation of his Eighth Amendment rights under 42 U.S.C. § 1983 and tort claims, including professional negligence, under Colorado state law.

The district court sent the § 1983 claims against King and Walsh to trial before a jury, which found against Glasser. Glasser doesn't appeal from that part of the

3

judgment, but he does appeal from two pretrial decisions. First, the district court granted King and Walsh's motion for summary judgment on the state-law claims based on the Colorado Governmental Immunity Act (CGIA), Colo. Rev. Stat. §§ 24-10-101 to 24-10-120. Second, the district court denied Glasser's motion to add claims against Aranda, Hansen, and Aultman.

## ANALYSIS

### I. CGIA Immunity

We review questions of CGIA immunity de novo. *See King v. United States*, 301 F.3d 1270, 1273 (10th Cir. 2002) (employing de novo review because CGIA immunity implicates subject-matter jurisdiction). Because the district court exercised supplemental jurisdiction over the state-law claims, we apply the substantive law of the forum state, here Colorado. *Bancoklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999).

Under the CGIA, public employees generally are immune from liability from tort claims that rise out of an act or omission within the scope of their employment and occurring in the performance of their duties. Colo. Rev. Stat. § 24-10-118(2)(a). But the CGIA provides two exceptions to this immunity: (1) where the act or omission is willful and wanton, or (2) where the injury "result[s] from the circumstances specified in [Colo. Rev. Stat. §] 24-10-106(1)." Colo. Rev. Stat. § 24-10-118(2)(a). Glasser has conceded that King's and Walsh's conduct was not willful and wanton. He instead contends that immunity is not appropriate because his injury results from circumstances specified in § 24-10-106(1), specifically

4

§ 24-10-106(1)(b), which waives immunity for the operation of a correctional facility.

The district court nevertheless granted immunity to King and Walsh pursuant to another subsection of § 24-10-106 that limits the waiver set forth in § 24-10-106(1)(b). That other subsection, § 24-10-106(1.5)(a), provides:

> The waiver of sovereign immunity created in paragraph[] (b) . . . of subsection (1) of this section does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability as set forth in subsection (1) of this section.

Glasser argues that § 24-10-106(1.5)(a) protects only public entities, not employees. He contends that § 24-10-118(2)(a) cross-references only the circumstances described in § 24-10-106(1), and that such cross-reference does not incorporate § 24-10-106(1.5)(a) or any other portion of § 24-10-106 other than § 24-10-106(1).

We disagree. "Because the CGIA derogates the common law, we strictly construe its grants of immunity and, in turn, broadly construe its waivers of immunity." *Burnett v. Colo. Dep't of Nat. Res.*, 346 P.3d 1005, 1008 (Colo. 2015). But "[t]he primary task in statutory interpretation is to determine and effectuate legislative intent by construing the statute as a whole, giving consistent, harmonious, and sensible effect to all of the statute's parts." *Id.* (internal quotation marks omitted). Section 24-10-106(1.5)(a) unequivocally limits the reach of the waiver in § 24-10-106(1)(b), relating to operation of a correctional facility, to exclude claims by persons who are incarcerated as a result of a conviction. In light of § 24-10-106(1.5)(a), the "circumstances" described in § 24-10-106(1)(b) cannot be

5

read to include acts or omissions occurring in the operation of a correctional facility if the claimant is an incarcerated convict. Therefore, the district court did not err in holding that King and Walsh were entitled to CGIA immunity.

Glasser points to *State v. Nieto*, 993 P.2d 493 (Colo. 2000), for the proposition that "[t]he Colorado Supreme Court has determined that public employees, specifically medical professionals working in a state prison facility, are not immune from suit for negligent acts or omissions committed in the course of the operation of a correctional facility." Aplt. Br. at 13. But the court in *Nieto* didn't even mention § 24-10-106(1.5)(a). Moreover, the facts underlying *Nieto* and the filing of the complaint in that case occurred before the enactment in 1994 of § 24-10-106(1.5). Thus, *Nieto* doesn't support Glasser's suggestion that correctional employees are not immune under § 24-10-106(1.5)(a). *See Norsby v. Jensen*, 916 P.2d 555, 560-61 (Colo. App. 1995) (holding that § 24-10-106(1.5)(a) didn't apply when plaintiff's injuries occurred and he filed his complaint before the enactment of § 24-10-106(1.5)).

Finally, Glasser argues that King and Walsh waived the benefit of CGIA immunity by failing to argue for it in their response to his motion to waive the CGIA-required certificate of review. But King and Walsh included immunity among the affirmative defenses identified in their answer, putting Glasser on notice. And as King and Walsh assert, a public employee's immunity under the CGIA is a matter of subject-matter jurisdiction, *Martinez v. Estate of Bleck*, 379 P.3d 315, 321-22 (Colo. 2016). As such, it can't be waived and may be raised at any point in the litigation.

*Town of Carbondale v. GSS Props., LLC*, 169 P.3d 675, 681 (Colo. 2007); *see also*

*Herr v. People*, 198 P.3d 108, 112 (Colo. 2008) ("[I]mperfect subject matter

jurisdiction cannot be waived by a party's silence.").

## II.     Denial of Motion to Amend

Three years after filing his complaint (and five years after his heart attack),

Glasser moved to file a third amended complaint to add claims against new

defendants Hansen, Aranda, and Aultman.  The district court denied leave to amend,

finding the claims to be time-barred.  "Although we review a district court's decision

to deny a motion to amend a pleading for abuse of discretion, when the denial is

based on a determination that amendment would be futile, our review for abuse of

discretion includes de novo review of the legal basis for the finding of futility."

*Peterson v. Grisham*, 594 F.3d 723, 731 (10th Cir. 2010) (internal quotation marks

omitted).

Glasser asserts he initially believed that the correctional officers had

accurately reported his symptoms to King and diligently handled his medical

emergency, and it was not until he deposed Hansen and Aranda on December 19,

2013, that he learned that Hansen didn't accurately describe his symptoms to King.

He argues that amendment should have been allowed because (1) he didn't discover

the officers' culpability until the December 19 deposition, and he filed his motion to

amend within two years of that date; (2) the correctional officers fraudulently

concealed the true facts from him until the deposition; or (3) the claims relate back to

the original complaint.

7

The district court correctly held that the proposed claims would be barred by Colorado's two-year residual statute of limitations for personal injury claims. *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993); *see also* Colo. Rev. Stat. § 13-80-102(1)(i). Because Glasser's proposed new claims were § 1983 claims, "[f]ederal law governs when the action accrues." *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011). As the district court recognized, "[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) (internal quotation marks omitted). "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Id.* (internal quotation marks omitted). Here, the injury that is the basis for this action is Glasser's March 26, 2010, heart attack. Thus, the district court didn't err in concluding that Glasser's § 1983 claims accrued on that date.

Glasser also attempts to invoke equitable tolling, arguing that the correctional officers fraudulently concealed their true actions. Equitable tolling is governed by state law. *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). Colorado allows equitable tolling, but limits it "to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Id.* at 1161 (internal quotation marks omitted). It is Glasser's burden to establish a sufficient factual foundation to support equitable tolling. *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992).

8

Glasser has failed to demonstrate either the existence of a wrongful impediment or truly extraordinary circumstances. Moreover, his second amended complaint indicated he suspected that the facts regarding the correctional officers' involvement might be different than they initially appeared. Accordingly, Glasser failed to establish his entitlement to equitable tolling.

Finally, Glasser argues that his proposed new claims relate back to his original complaint under Fed. R. Civ. P. 15(c)(1)(B), which allows relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The district court held that because the proposed new claims involved new defendants, Fed. R. Civ. P. 15(c)(1)(C) governed the issue. That rule concerns amendments that "change[] the party or the naming of the party against whom a claim is asserted." Glasser argues that because the three subsections of Rule 15(c)(1) are connected by the disjunctive "or," he may proceed under Rule 15(c)(1)(B) rather than 15(c)(1)(C).

But it's clear that Glasser sought to add new claims against new defendants, some three years after the expiration of the statute of limitations. We've held that "[t]he addition or substitution of parties who had no notice of the original action is not allowed. Substitution of a completely new defendant creates a new cause of action. Permitting such procedure would undermine the policy upon which the statute of limitations is based." *Graves v. Gen. Ins. Corp.*, 412 F.2d 583, 585 (10th Cir. 1969) (citations omitted). Glasser hasn't established that the second amended

complaint's discussion of the facts served as notice to the correctional officers of any claims against them.

Additionally, Glasser didn't move to amend his complaint to add his proposed new claims until April 2015, some sixteen months after taking the correctional officers' depositions in December 2013. He admitted to the district court that he delayed his motion to amend for his own strategic reasons. Undue delay, without adequate reason, also supports denial of a motion to amend. *See Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1195-96 (10th Cir. 2015).

## CONCLUSION

Glasser's motion to proceed without prepayment of costs or fees is granted. The judgment of the district court is affirmed.

Entered for the Court


Nancy L. Moritz
Circuit Judge