**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 29 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

v.

STEVEN GRAY,

　　　　Defendant-Appellant.

No. 98-6043

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-97-744-A)**

---

Submitted on the briefs:

Steven Gray, Pro Se.

Patrick M. Ryan, United States Attorney, Frank Michael Ringer, Assistant U.S. Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **PORFILIO** , **McKAY** , and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

Two issues, the claimed misapplication of the prison mailbox rule to the filing of a motion pursuant to 28 U.S.C. § 2255 and the effectiveness of counsel at the guilt and sentencing phases of appellant's proceedings, are brought to us for resolution. We conclude that in holding appellant's motion untimely, the district court misapplied the mailbox rule because the facility in which appellant was incarcerated maintains an inadequate system for processing legal mail. Nonetheless, we affirm the district court's denial of appellant's motion because he failed to demonstrate that his counsel was ineffective. [1]

Appellant Steven Gray pleaded guilty in February 1995 to conspiring "to possess with intent to distribute and to distribute 15 [later corrected to 14] ounces of cocaine base, 'crack', a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." I R., Indictment at 1. Appellant was sentenced, inter alia, to 151 months' imprisonment based in part on the enhancement applicable to drug crimes involving crack cocaine. He did not take a direct appeal, and he is currently incarcerated in the Federal Correctional Institution in El Reno, Oklahoma. Proceeding pro se, appellant mailed the present motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

§ 2255 in April of 1997. [2] The district court denied the motion as untimely on the basis that the motion should have been filed before April 24, 1997, *see United States v. Simmonds*, 111 F.3d 737, 746 (10th Cir. 1997), but was received by the court clerk on April 30. The district court rejected appellant's argument that the date of filing should be considered the day he allegedly mailed his motion, April 21, 1997, because he used the prison's regular mail system rather than its legal mail system. Alternatively, the district court concluded that appellant's claims fail on the merits. We previously granted appellant's request for a certificate of appealability. [3]

## I

Because appellant's conviction became final in 1995, he had one year from the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, in which to file his § 2255 motion. *See Simmonds*, 111 F.3d at 746. According to the certificate of service attached to the motion, appellant placed his motion "in the institution's internal mailbox, first-class postage prepaid, on April 21, 1997, for filing with the Clerk, United States District Court." I R., Doc. 39. However, the envelope containing the motion was postmarked April 29, and stamped as received by the

---

[2] There is a dispute regarding the exact date of mailing.

[3] We grant appellant's motion to file a reply brief.

court clerk on April 30, and the motion was not filed by the district court until May 6. In responding to the motion, the government argued that it was untimely because it was not filed (or received) by the district court prior to the end of the one-year limitations period. The government also contended that appellant was not entitled to the benefit of the prison mailbox rule, in which the date of filing is the date a prisoner delivers legal mail to prison authorities for forwarding to the court clerk, *see Houston v. Lack*, 487 U.S. 266, 274-76 (1988), because he used the institution's regular mail system rather than its legal mail system. Relying on *United States v. Leonard*, 937 F.2d 494, 495 (10th Cir. 1991), the district court agreed and held that the motion was not timely filed. On appeal, appellant contends he should receive the benefit of the prison mailbox rule because the legal mail system used at El Reno does not log in all legal mail.

In *Leonard*, we held that where a prison maintains a legal mail system separate from its regular mail system, a prisoner must use the legal mail system to be entitled to the benefit of the mailbox rule. *See* 937 F.2d at 495 ("A pro se prisoner who fails to take advantage of the special filing rule applicable to notices of appeal posted through the legal mail system foregoes the benefits of that system.").[4] Our analysis relied on *Houston*'s reasoning that "the prison's legal

---

[4]    The rule created in *Houston* and interpreted in *Leonard* applied to the filing of notices of appeal, and derived from the fact that, unlike counseled

(continued...)

mail system procedures, by which mail is logged in at the time and date it is received, provide a 'bright line rule' for determining the date of a pro se prisoner's 'filing.'" *Id.* Implicit in both *Houston*'s and *Leonard*'s analyses is the understanding that legal mail systems automatically log in *all* legal mail through relatively simple, straightforward procedures. *Cf. Koch v. Ricketts*, 68 F.3d 1191, 1193 (9th Cir. 1995) (" *Houston* assumed that a logging procedure was not only available for regular first class mail, but was also automatic."). It is the existence of such procedures that led to the Court's adoption of the mailbox rule to reduce disputes over when a pro se prisoner's papers are deemed filed:

> [T]he rejection of the mailbox rule in other contexts has been based in part on concerns that it would increase disputes and uncertainty over when a filing occurred and that it would put all the evidence about the date of filing in the hands of one party. These administrative concerns lead to the opposite conclusion here. The

---

[4](...continued)
litigants who may take measures to ensure timely filings, "a prisoner acting pro se has no choice but to entrust his mail to prison officials and cannot adequately follow up on misdirected mail." *Leonard*, 937 F.2d at 495. Courts including this one have extended the rule to a variety of other situations involving the timeliness of pro se prisoner filings, *see, e.g.*, *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989) (applying rule to objections to magistrate judge's report in civil rights case), including the filing of habeas corpus petitions under 28 U.S.C. §§ 2254 and 2244(d), *see Hoggro v. Boone*, 150 F.3d 1223, 1226 n.3 (10th Cir. 1998); *see also Nichols v. Bowersox*, 172 F.3d 1068, 1074-77 (8th Cir. 1999) (en banc); *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998); *Burns v. Morton*, 134 F.3d 109, 112-13 (3d Cir. 1998). Because the concerns over a prisoner's ability to ensure timely filing apply equally to a § 2255 motion, we see no reason why it should not apply here, given the proper circumstances. The government does not argue to the contrary.

pro se prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.

*Houston*, 487 U.S. at 275 (citation omitted).

The legal mail system in force at El Reno does not satisfy *Houston*'s and *Leonard*'s implicit understanding that prison authorities log in all legal mail at the time it is received. As explained by its inmate systems manager, "[l]egal mail may be sent from this institution using certified mail or regular mail. Only legal mail sent by certified mail would be recorded." I R., Doc. 48, Ex. A at 1. Thus, the only time legal mail is logged in is when the prisoner pays the extra mailing fee to send it by certified mail, a practice the Ninth Circuit has found to be questionable. *See Koch*, 68 F.3d at 1193 ("There was no logging procedure available to Koch that did not involve an additional fee [through certified, registered or insured mail]. Yet Koch still faced the obstacles that motivated the Court to adopt the *Houston* rule in the first place: lack of control over the progress of this mailing, and the potential for interference by prison officials whose interests are adverse to the prisoner bringing a § 1983 suit.").

-6-

The government does not argue that it can permissibly require an inmate to pay the additional costs applicable to certified mail before the inmate can benefit from the mailbox rule, [5] but contends that El Reno utilizes another adequate procedure to record the mailing of noncertified mail. This procedure provides that the following notification will be placed on the envelope of any noncertified legal mail:

> P.O. Box 1000
> El Reno, Oklahoma 73036
> Date _____
>
> The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened nor inspected. If the writer raised a question or problem over which [this] facility has jurisdiction, you may wish to return this material for further information and clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosure to the above address.

I R., Doc. 48, Ex. A at 1-2. According to El Reno's inmate systems manager, "[t]he date the envelope *was mailed* from the institution would be placed in the above notification." *Id.* at 2 (emphasis added).

---

[5] It may well avoid this tack due to potential access-to-court problems. Although not directly analogous, an indigent prisoner's right of access to the courts does not require provision of unlimited free postage for sending legal mail. *See Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978). Nonetheless, we are unaware of any case law permitting an institution to require use of a form of mailing more expensive than first class mail before the mailbox rule applies to an inmate's legal mail.

While we do not entirely understand the purpose of this notification, we conclude that it does not necessarily indicate the date on which legal mail is presented to prison authorities, which is the pertinent information with respect to the mailbox rule, because the only date recorded is the date of *mailing*. Moreover, it does not render determination of the date of mailing a "straightforward inquiry" as *Houston* anticipated, but instead relies on the fortuity of the court preserving the envelope containing a prisoner's legal mail. [6]

We conclude that because El Reno's legal mail system does not provide a log or other record of the receipt by prison authorities of all legal mail sent from the facility, it does not meet the implicit requirements of *Houston* and *Leonard*. Appellant therefore should not be barred under *Leonard* from receiving the benefit of the mailbox rule. Because the only evidence of the date appellant gave his motion to prison authorities for mailing is his certificate of service, which contains a declaration in compliance with 28 U.S.C. § 1746, that he did so on April 21, appellant's motion was timely. [7]

---

[6] We note that while the government has explained how the El Reno procedures for handling legal mail work, it has not attempted to explain why the institution utilizes such seemingly convoluted procedures. On the other hand, appellant has not explained why he did not use the legal mail system.

[7] This conclusion makes it unnecessary for us to determine whether *Leonard* was good law at the time appellant mailed his motion. For purposes of consistency, we have presumed that *Leonard*'s restriction on the application of the mailbox rule, which involved a notice of appeal, would apply equally to the

(continued...)

## II

We turn to the merits.  Appellant contends his counsel was constitutionally ineffective during his plea colloquy and at sentencing for essentially the same reason—for failing to put the government to its burden of proving that the conspiracy for which appellant was convicted involved the form of cocaine known as "crack," on which appellant's sentence was based, instead of cocaine powder.

---

[7](...continued) instant § 2255 motion.  However, when the Federal Rules of Appellate Procedure essentially codified the  *Houston*  rule in 1993 in Rule 4(c),  *see* Advisory Committee Notes regarding 1993 Amendment, they may have superseded *Leonard.*  That rule, which was unchanged at the time of the relevant events here, provided as follows:

> If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing.  Timely filing may be shown by a notarized statement or by a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid.

Rule 4(c) (effective December 1, 1993).  The Ninth Circuit concluded that this rule essentially superseded its case law analogous to  *Leonard* .  *See Koch*, 68 F.3d at 1193; *see also Thomas v. Gish* , 64 F.3d 323, 325 (7th Cir. 1995).  As written, the rule does not require use of any particular mail system as long as there is a proper statement or declaration indicating timely deposit with prison authorities. Effective December 1998, Rule 4(c) was further amended to add a limitation similar to that provided by  *Leonard* .  The following sentence was added in between the two sentences quoted above (along with editorial changes to the second sentence): "If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule."  Rule 4(c) (effective December 1, 1998);  *see also Nichols* , 172 F.3d at 1077 n.5.

-9-

Because the sentence for crack is significantly stiffer than for cocaine powder, *see, e.g.*, *United States v. Brooks*, 161 F.3d 1240, 1247 (10th Cir. 1998) (noting that "for purposes of calculating a defendant's base offense level, the Sentencing Guidelines equate one gram of crack to 100 grams of powder cocaine"), and the government has the burden at sentencing of proving the drug involved, *see United States v. Glover*, 97 F.3d 1345, 1347 (10th Cir. 1996); *United States v. James*, 78 F.3d 851, 858 (3d Cir. 1996), appellant contends his counsel was ineffective for failing to put the government to its burden. *See Glover*, 97 F.3d at 1349. Appellant also argues that his counsel's deficient performance at the plea colloquy somehow made his plea involuntary.

To prove his counsel was constitutionally ineffective, appellant must show that his counsel's performance was deficient and he was prejudiced by the deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Glover*, 97 F.3d at 1349-50. To the extent appellant contends his counsel's ineffectiveness made his guilty plea involuntary, he must show that had counsel performed effectively, he would not have pleaded guilty and would have proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To prevail in his contention that counsel should have advised him of a potential defense, appellant must show that the defense likely would have prevailed at trial. *See id.* at 59.

Appellant was convicted of conspiring to possess and distribute a controlled substance. *See* 21 U.S.C. §§ 841(a), 846. His conviction was not predicated on whether the particular controlled substance was crack or cocaine powder, *see* § 841(a); that distinction is only relevant for sentencing purposes under § 841(b)(1)(A) and U.S.S.G. § 2D1.1. *Cf. Glover*, 97 F.3d at 1347 (discussing difference between conviction for methamphetamine and sentencing for particular type of methamphetamine). Appellant admits that the substance involved was either crack or cocaine powder, and he does not contend that he would have pleaded innocent had his counsel not "failed to object to the ambigous [sic] terms of the factual basis of the plea during the colloquy." Appellant's Mem. of Law in Supp. of Mot. for Certificate of Appealability at 10. Although appellant contends that his counsel failed to advise him of the mandatory minimum sentence for a conviction under Count One of the indictment—an allegation belied by the record [8]—he does not allege he would not have pleaded guilty had he known of the disparate sentences for crack and cocaine powder. We thus reject appellant's claim that his counsel's failure to request the government preliminarily to prove a sentencing matter somehow made his plea involuntary. *See Hill*, 474 U.S. at 58.

---

[8] Prior to and at the plea hearing, appellant admitted he knew that there was a ten-year mandatory minimum for conviction under that count of the indictment.

At sentencing, the government has the burden of proving the type of drug involved to enhance a sentence over that provided by the conviction itself. *See Glover*, 97 F.3d at 1347. Although appellant's counsel did not put the government to its burden at sentencing, by that time it was too late. Count One of the indictment specified "cocaine base, 'crack,'" and appellant pleaded guilty to that count. Earlier, he had admitted in his Petition to Enter Guilty Plea that he had conspired to possess and distribute "crack cocaine base (crack)," I R., Doc. 31 at 7, and admitted at his plea hearing that he dealt with crack, *see* I R., Doc. 48, Ex. B at 5-6. [9] These admissions relieve the government of any burden it had at sentencing to show that the drug involved was crack. *Cf. Glover*, 97 F.3d at 1347 ("We emphasize that neither the indictments nor the pleas in this case went beyond the requisite statutory elements by specifying the type of methamphetamine involved; if they had, subsequent (re)litigation of the issue might well have been precluded.") (citations omitted); *see also United States v. Bush*, 70 F.3d 557, 562-63 (10th Cir. 1995) (defendant's admissions in plea agreement and at plea hearing and trial of co-conspirators sufficient to support sentence based on crack).

---

[9] Later at the plea hearing when discussing the factual basis for the plea, the parties and court used the words "cocaine base" and "cocaine" as well as "crack." In light of appellant's earlier explicit admissions that the substance was "crack," this later colloquy does not undermine the evidence that it was crack.

Perhaps appellant argues that his counsel was ineffective in recommending that he plead guilty to Count One as written, thereby admitting a sentencing factor not necessary for conviction and which in turn relieved the government of its burden at sentencing. If that be the case, it is appellant's burden to prove counsel's deficient performance prejudiced him, *see Strickland*, 466 U.S. at 687. Because he claims that he should not have been sentenced for possession of crack, he must prove that the drugs central to his conviction were not crack, *cf. Hill*, 474 U.S. at 59 (where ineffectiveness claim based on failure to advise of potential defense, prejudice inquiry turns on likelihood of success of defense). [10] Having failed to claim the existence of evidence that the drug involved was not crack, appellant cannot meet the prejudice prong of his ineffective counsel claim.

Although the district court incorrectly held that appellant's motion was untimely, it correctly found that his motion fails on the merits. Therefore, the district court's judgment is **AFFIRMED**.

---

[10]  We emphasize that, even though appellant is challenging the ultimate effect of counsel's assistance on his sentence, we are examining counsel's performance at the guilty plea stage. We are not dealing with a pure sentencing matter as we were in *Glover*, where counsel failed to put the government to its burden at sentencing, and we therefore did not require the appellant to prove his conviction was based on the drug producing the lesser sentence to prove prejudice. *See Glover*, 97 F.3d at 1349-50.