**UNITED STATES COURT OF APPEALS**

**August 2, 2022**

**TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

CHRISTOPHER WILLS,

    Petitioner - Appellant,

v.

J.A. BARNHART,

    Respondent - Appellee.

No. 20-1418
(D.C. No. 1:20-CV-02115-LTB-GPG)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

Petitioner-Appellant Christopher Wills, proceeding pro se,[1] appeals from

the district court's dismissal of his petition for a writ of habeas corpus pursuant to

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1(a) and Tenth Circuit Rule 32.1(A). After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]    Because Mr. Wills is proceeding pro se, we construe his filings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but "we will not 'assume the role of advocate.'" *United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (quoting *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)).

28 U.S.C. § 2241. Mr. Wills argues that the district court erred in denying his petition for lack of jurisdiction. He also renews his motion to proceed *in forma pauperis* on appeal.

Because Mr. Wills has not shown that 28 U.S.C. § 2255 provides an ineffective or inadequate remedy for his claim, as required to challenge the legality of detention under 28 U.S.C. § 2241, we **affirm** the district court's judgment. However, because of Mr. Wills's demonstrated need and the rational basis behind his argument, we **grant** his motion to proceed *in forma pauperis*.

## I

Mr. Wills is a federal prisoner in Florence, Colorado serving a life sentence without the possibility of parole. A jury convicted Mr. Wills of using a false job opportunity to lure a man, Zabiuflah Alam, from Washington, D.C. to Fairfax County, Virginia, and then murdering him to prevent him from testifying as a witness against Mr. Wills in a burglary case. Specifically, after Mr. Alam testified against Mr. Wills at a preliminary hearing in a burglary case, Mr. Wills placed a job flyer advertising a groundskeeping job under Mr. Alam's door. When Mr. Alam called the number on the flyer, he was told to meet someone for a job interview at Union Station in Fairfax County, Virginia. Mr. Alam was never seen or heard from again.

2

In February 2000, a grand jury charged Mr. Wills with kidnapping resulting in death in violation of the Federal Kidnapping Act, 18 U.S.C. § 1201(a)(1), and interstate stalking resulting in death in violation of 18 U.S.C. § 2261A.  Prior to trial, Mr. Wills argued that the jurisdictional requirement of the Federal Kidnapping Act could not be established when the victim transports himself across state lines without accompaniment by the alleged perpetrator.  The district court agreed with Mr. Wills and dismissed his indictment.  *See United States v. Wills* (*Wills I*), 234 F.3d 174, 176 (4th Cir. 2000), *cert. denied*, 533 U.S. 953 (2001).  On appeal, the Fourth Circuit reversed and held that Mr. Wills's conduct in causing Mr. Alam to travel unaccompanied across state lines sufficed to confer jurisdiction under § 1201(a)(1).  *See id.*  Specifically, it explained that "[t]he plain language of the [Federal Kidnapping] Act does not require that the defendant accompany, physically transport, or provide for the physical transportation of the victim.  Rather the Act only requires that the victim 'is willfully transported.'"  *Id.* at 178.  On remand, in 2001, the jury convicted Mr. Wills of  both charged offenses.  Subsequently, the district court sentenced Mr. Wills to life in prison without parole.

A slew of direct and collateral challenges to Mr. Wills's conviction and sentence followed.  The Fourth Circuit affirmed his conviction and sentence on direct appeal.  In doing so, the Fourth Circuit expressly adhered to its prior

3

decision that "the fact that [Mr.] Wills caused unaccompanied travel over state lines [was] sufficient to confer jurisdiction" under the Federal Kidnapping Act. *United States v. Wills* (*Wills II*), 346 F.3d 476, 487 (4th Cir. 2003) (alteration in original) (quoting *Wills I*, 234 F.3d at 179), *cert. denied*, 542 U.S. 939 (2004). In 2005, Mr. Wills sought postconviction relief pursuant to 28 U.S.C. § 2255—alleging, among other things, that the government violated his Sixth Amendment right to effective assistance of counsel and his Sixth Amendment right to confront the witnesses against him. *See Wills v. United States* (*Wills III*), No. 1:05-CV-775, 2006 WL 680999, *1 (E.D. Va. Mar. 16, 2006) (unpublished). The district court denied his petition, and the Fourth Circuit subsequently denied his request for a certificate of appealability. *See United States v. Wills* (*Wills IV*), 224 F. App'x 240, 241 (4th Cir. 2007) (per curiam) (unpublished). Later, on July 10, 2020, the Fourth Circuit denied Mr. Wills's motion for an order authorizing the district court to consider a second or successive § 2255 motion. *See United States v. Wills* (*Wills VI)*, No. 20-313 (4th Cir. July 10, 2020), ECF No. 9.

Previously, Mr. Wills had filed an application for relief under 28 U.S.C. § 2241, again claiming that his conduct did not satisfy the jurisdictional element of the Federal Kidnapping Act because he did not accompany his victim across state lines. In 2007, the United States District Court for the Middle District of Pennsylvania construed Mr. Wills's petition for a writ of habeas corpus pursuant

4

to 28 U.S.C. § 2241 as a successive § 2255 motion and dismissed for lack of jurisdiction. *See Wills v. United States* (*Wills V*), 361 F. App'x 302, 303 (3d Cir. 2010) (per curiam) (unpublished). The Third Circuit dismissed Mr. Wills's subsequent appeal as untimely. *Id.*

In 2009, Mr. Wills filed another § 2241 petition in the Middle District of Pennsylvania, again arguing that his conduct failed to satisfy the jurisdictional element of the Federal Kidnapping Act because he had not crossed state lines with the victim. *Id.* This time, he also argued that a 2006 amendment to the Federal Kidnapping Act expanded jurisdiction to reach his conduct for the first time. *Id.* Once more, the district court disagreed that Mr. Wills could seek relief under § 2241 and dismissed his petition for lack of jurisdiction, and the Third Circuit affirmed. *Id.* at 303–04.

In 2020, Mr. Wills filed the present § 2241 petition in the District of Colorado, contending that the 2006 statutory amendments[2] to 18 U.S.C.

---

[2] The statute in effect at the time of Mr. Wills's offense defined kidnapping as:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when (1) the person is willfully transported in interstate or foreign commerce . . . .

18 U.S.C. § 1201(a)(1) (1998).

(continued...)

§ 1201(a)(1), and also to 18 U.S.C. § 2261A, prove that at the time of his conviction, his conduct had not satisfied the jurisdictional requirement that he cross state lines in connection with his criminal activity.[3]

The district court, adopting the magistrate judge's recommendation, dismissed the petition without prejudice; it explained that it did not have statutory jurisdiction because Mr. Wills failed to show the inadequacy or ineffectiveness of

---

[2](...continued)
As amended in 2006, the statute defines kidnapping as:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, *or the offender* travels in interstate or foreign commerce or *uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense*.

18 U.S.C. § 1201(a)(1) (2006) (emphasis added).

[3]     Mr. Wills fails to cite or describe the relevant amendments to 18 U.S.C. § 2261A.  Based on review of the statute's history, however, as relevant here, it appears the statute previously provided that an individual who "uses the mail or any facility of interstate or foreign commerce" may be held liable for stalking.  18 U.S.C. § 2261A(2) (1998).  As amended in 2006, the statute expanded that provision to include any individual who "uses the mail, *any interactive computer service*, or any facility of interstate or foreign commerce."  18 U.S.C. § 2261A(2) (2006) (emphasis added).  Unlike the 2006 Federal Kidnapping Act amendment, it is unclear why the former version would not apply to Mr. Wills but the latter would.  However, we need not (and do not) resolve this issue, as we dismiss Mr. Wills's appeal for failure to show the inadequacy or ineffectiveness of the remedy provided under 28 U.S.C. § 2255.

6

the remedy provided under 28 U.S.C. § 2255.  Additionally, the district court

denied Mr. Wills leave to proceed *in forma pauperis* on appeal, certifying that an

appeal would not be taken in good faith.  This appeal and renewed motion to

proceed *in forma pauperis* followed.

## II

### A

Mr. Wills's notice of appeal must be timely for us to exercise jurisdiction

over his claim.  *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143 (10th

Cir. 2004) (mem.) ("The filing of a timely notice of appeal is an absolute

prerequisite to our jurisdiction." (quoting *Parker v. Bd. of Pub. Utils.*, 77 F.3d

1289, 1290 (10th Cir. 1996))).  The deadline for Mr. Wills's notice of appeal was

November 16, 2020, i.e., sixty days after the district court's entry of judgment on

September 17, 2020.  *See* FED. R. APP. P. 4(a)(1)(B)(i)–(iv) (providing a sixty-day

filing period for a notice of appeal when the government is a party to the

proceeding).  The notice of appeal itself and its cover letter are dated November

15, 2020—one day in advance of the deadline.  However, the notice was not filed

with the court until November 23, 2020.  Additionally, the envelope in which the

notice was sent was postmarked on November 19, 2020, and contained a date

7

stamp of "November 18, 2020," and a handwritten notation of "November 17, 2020." R. at 90.

Our Court Clerk's Office issued an order to show cause to Mr. Wills, aimed at ultimately assessing whether he could demonstrate timely filing of the notice of appeal. In his supplemental filing and accompanying declaration, Mr. Wills does not dispute that his notice of appeal was filed after the deadline. However, Mr. Wills states that he gave the notice of appeal to prison staff in advance of the deadline, on November 15, 2020. He asks us to apply the prison mailbox rule and, consequently, to conclude that his notice of appeal was timely filed. He also describes the delays in mail processing related to the COVID-19 pandemic that have been occurring at his prison. Finally, Mr. Wills claims that he attempted to obtain a copy of the prison mail log, but his request was denied by prison staff. The jurisdictional question was referred to this merits panel for plenary consideration. We resolve this question in Mr. Wills's favor.

Under the prison mailbox rule, under specified conditions, "a *pro se* prisoner's notice of appeal will be considered timely if [it is] given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents." *Price v. Philpot*, 420 F.3d 1158, 1163–64 (10th Cir. 2005); *see* FED. R. APP. P. 4(c)(1). "This special exception is rooted in the reality that, unlike other litigants, prisoners do not have the opportunity to

8

oversee the delivery process personally and should not be penalized for any delay in the prison's mail processing systems." *Blake v. Aramark Corp.*, 489 F. App'x 267, 268 (10th Cir. 2012) (unpublished) (citing *Houston v. Lack*, 487 U.S. 266, 270–71 (1988)).

Mr. Wills bears the burden of establishing compliance with the prison mailbox rule. *Price*, 420 F.3d at 1165. There are two ways he can do so. *First*, he can "alleg[e] and prov[e] that he . . . made timely use of the prison's legal mail system if a satisfactory system is available." *Id.* at 1166. "[I]f the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule." *Ceballos-Martinez*, 387 F.3d at 1144; *see also* FED. R. APP. P. 4(c)(1) ("If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of [the prison mailbox rule]."); *United States v. Leonard*, 937 F.2d 494, 495 (10th Cir. 1991) (holding that where a prison maintains a legal mail system separate from its regular mail system, a prisoner must use the legal mail system to be entitled to the benefit of the mailbox rule). *Second*, when an "inmate does not have access to a legal mail system—or if the existing legal mail system is inadequate to satisfy the mailbox rule"—then the inmate must prove adherence to the rule through "a declaration [in compliance with 28 U.S.C. §1746] or notarized statement setting forth the notice [of appeal]'s date of deposit with prison officials and attest[ing] that first-

9

class postage was pre-paid." *Price*, 420 F.3d at 1165 (first alteration in original) (quoting *Ceballos-Martinez*, 387 F.3d at 1145).

We hold that Mr. Wills's appeal is timely under the prison mailbox rule. As described above, in response to our show cause order, Mr. Wills submitted a declaration stating under penalty of perjury that he gave the notice of appeal, in an envelope with postage prepaid, to a prison official on November 15, 2020. The notice of appeal itself and accompanying cover letter are also dated November 15, 2020, corroborating Mr. Wills's account. Further, according to Mr. Wills's declaration he specifically requested that the notice of appeal be sent through the prison's legal mail system. The contents of Mr. Wills's declaration suffice to show that his notice of appeal was timely under the prison mailbox rule. *See Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1350–51 (10th Cir. 2017) (deeming notice of appeal timely under prison mailbox rule based on declaration stating under penalty of perjury that inmate's notice of appeal was placed as legal mail in the prison mail drop by the filing deadline with postage prepaid); *Quintana v. Trani*, 820 F. App'x 727, 730 (10th Cir. 2020) (unpublished) (same).[4]

---

[4] Although Mr. Wills's declaration does not specifically state that *first-class* postage was prepaid, first-class postage is affixed to the envelope containing the appeal. *See* R. at 90. Construing Mr. Wills's submissions liberally, we find that this omission does not deprive us of jurisdiction. *See*

(continued...)

In so concluding, we decline to rely on the dates on the envelope containing the notice of appeal—a handwritten notation of November 17, 2020, a date stamp of November 18, 2020,[5] and a postmark of November 19, 2020—any of which, if credited as the relevant date, would render Mr. Wills's notice of appeal untimely. In short, these do not contradict Mr. Wills's account as set forth in his declaration. The prison mailbox rule turns on when the document was *placed in the custody of* a prison official for mailing. *See Houston*, 487 U.S. at 275 ("[M]aking filing turn on the date the *pro se* prisoner *delivers* the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." (emphasis added)); *Price*, 420 F.3d at 1165 (under the prison mailbox rule, a prisoner must "establish the date on which he or she gave the papers to be filed with the court to a prison official"); *see also United States v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999) (noting that date on which envelope was mailed from the institution "does not necessarily indicate the date on which legal mail is presented to prison

---

[4](...continued)
*Christmas v. Oklahoma*, 290 F. App'x 126, 129 (10th Cir. 2008) (unpublished) (applying prison mailbox rule, notwithstanding the fact that inmate failed to specifically state that "*first-class* postage was prepaid," where information was included elsewhere in inmate's submission).

[5]    The date stamp appears to be part of an official prison stamp designating the envelope and its contents as legal mail. Although the contents of the stamp are largely illegible except for the date, *see* R. at 90, legal mail stamps containing an identical "date" line appear on each of the envelopes containing Mr. Wills's previous court filings, *see, e.g.*, R. at 36, 63, 83.

11

authorities, which is the pertinent information with respect to the mailbox rule");

*cf. Davis v. Woodford*, 446 F.3d 957, 960 (9th Cir. 2006) ("The fact that the

prison log shows that the mail was sent on January 7 is not inconsistent with its

having been deposited on December 31.").

The November 19 postmark on the envelope is not inconsistent with Mr.

Wills's statement that he *delivered* the notice of appeal to prison staff on

November 15, 2020. *See, e.g.*, *Gray*, 182 F.3d at 766 (determining that motion

was timely under the prison mailbox rule, notwithstanding postmark on envelope

dated five days after the filing deadline). Further, the significance of the

handwritten date and date stamp on the envelope are unclear from the record. But

neither they nor anything else in the record contradict the content of Mr. Wills's

declaration. Consequently, relying on Mr. Wills's declaration, we accept

November 15, 2020, as the date on which Mr. Wills provided the notice of appeal

to the prison for mailing. Accordingly, Mr. Wills's appeal is timely under the

prison mailbox rule.[6]

**B**

---

[6]    Because we deem Mr. Wills's notice of appeal timely, we need not
address his request for a hearing and issuance of subpoenas to access the prison's
legal mail log.

We turn, then, to Mr. Wills's central argument: that the district court erred in denying his § 2241 petition for lack of jurisdiction.  Our review of this legal question is de novo.  *Hale v. Fox*, 829 F.3d 1162, 1170 (10th Cir. 2016).[7]

Habeas petitions under 28 U.S.C. § 2241 and habeas petitions (i.e., motions) under 28 U.S.C. § 2255 typically serve distinct purposes: "[a] petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity," while "[a] 28 U.S.C. § 2255 petition attacks the legality of detention." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996); *see also Prost v. Anderson*, 636 F.3d 578, 581 (10th Cir. 2011) ("Congress long ago decided that a federal prisoner's attempt to attack the legality of his conviction or sentence generally must be brought under § 2255," and, by contrast, "§ 2241 petitions . . . are generally reserved for complaints about the *nature* of a prisoner's confinement, not the *fact* of his confinement.").

---

[7]    Because Mr. Wills is a federal prisoner proceeding (at least nominally) under 28 U.S.C. § 2241, we may turn to the merits without determining whether a certificate of appealability (COA) should be granted.  *See Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000) ("[A] *federal* prisoner proceeding under § 2241 does not need a certificate of appealability to appeal a district court's denial of the petition."); *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) ("[A] certificate of appealability under the Antiterrorism and Effective Death Penalty Act of 1996 . . .  is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241.").  The district court denied Mr. Wills a COA when it dismissed his petition.  However, under the governing law that we have just outlined, the court's denial of a COA has no effect on our resolution of this appeal.

However, under the narrow "savings clause" of § 2255(e), a federal prisoner may resort to § 2241 to challenge the legality of his detention, not just the nature of his confinement, where "the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Mr. Wills bears the burden of demonstrating that the remedy available pursuant to § 2255 is inadequate or ineffective. *See Prost*, 636 F.3d at 584. He fails to satisfy this burden.

The touchstone inquiry to determine whether § 2255 provides Mr. Wills with an inadequate or ineffective remedy is "whether [his] argument challenging the legality of his detention could have been tested in [his] initial § 2255 motion." *Id*. "If the answer is yes, then the petitioner may not resort to the savings clause [in § 2255(e)] and § 2241." *Id.* That a procedural bar or low likelihood of success makes a § 2255 remedy extremely unlikely does not suffice under this test. The opportunity to seek a § 2255 remedy must be "genuinely absent" before a federal prisoner may challenge his conviction or sentence in a § 2241 application. *Id.* at 588. It ineluctably follows that "[o]nly in rare instances will § 2255 fail as an adequate or effective remedy to challenge a conviction or the sentence imposed." *Sines v. Wilner*, 609 F.3d 1070, 1073 (10th Cir. 2010); *see also Caravalho v. Pugh*, 177 F.3d 1177, 1178 (10th Cir. 1999) (noting that the

14

remedy available pursuant to § 2255 is inadequate or ineffective only in "extremely limited circumstances").

Bearing these principles in mind, we conclude that Mr. Wills fails to demonstrate that the § 2255 remedy is inadequate or ineffective. First, Mr. Wills not only could have, but did in fact, challenge the legality of his detention through a § 2255 petition, which was denied. "Any argument that this denial was erroneous 'does not render the procedural mechanism Congress provided for bringing that claim . . . an inadequate or ineffective *remedial vehicle* for *testing* [the claim's] merits within the plain meaning of the savings clause.'" *Dembry v. Hudson*, 796 F. App'x 972, 975 (10th Cir. 2019) (unpublished) (quoting *Prost*, 636 F.3d at 590). Put otherwise, that Wills previously was denied relief pursuant to § 2255 does not show the genuine absence of a remedy under § 2255; to the contrary, it demonstrates that Mr. Wills had the opportunity to test his principal argument through the *proper* vehicle of a § 2255 motion. *See Bradshaw*, 86 F.3d at 166 ("Failure to obtain relief under 2255 does not establish that the remedy so provided is either inadequate or ineffective." (quoting *Williams v. United States*, 323 F.2d 672, 673 (10th Cir. 1963))); *Prost*, 636 F.3d at 589 ("[I]t is the infirmity of the § 2255 remedy itself, not the failure to . . . prevail under it, that is determinative.").

15

Furthermore, that the 2006 statutory amendments did not exist when Mr. Wills "initially filed his § 2255 motion or that adverse circuit precedent existed at the time does not render § 2255's *procedure* ineffective or inadequate." *Dembry*, 796 F. App'x at 975  (emphasis added); *see Prost*, 636 F.3d at 589–90 (rejecting petitioner's argument that he should be permitted to advance novel statutory interpretation theory bearing on his conviction through a § 2241 motion after failing to do so in his initial § 2255 proceeding).  Our analysis in *Lewis v. Eng.* applies equally here:

> [Petitioner] argues that the savings clause applies because his . . . argument [based on the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016)] was unavailable to him when he filed his initial § 2255 motion.  Thus, the only way [petitioner] could've prevailed under § 2255 is if he anticipated *Mathis*, argued it in the face of conflicting Fifth Circuit precedent, secured a writ of certiorari or en banc review, and convinced the Supreme Court or en banc Fifth Circuit that his position was correct.  We don't doubt that this would have been an uphill battle; but [petitioner] at least had the *opportunity* to take this path.  And *Prost* makes clear that this *opportunity*—as unlikely as success might have been—forecloses our application of § 2255(e)'s savings clause.

736 F. App'x 749, 752 (10th Cir. 2018) (unpublished); *see also Kirkland v. Eng.*, 757 F. App'x 640, 643 (10th Cir. 2018) (unpublished) (holding that "[petitioner] cannot seek relief under § 2241 because he 'was entirely free to raise and test'" an argument applying the logic of subsequently issued Supreme Court decisions "in his initial § 2255 motion" (quoting *Prost*, 636 F.3d at 590)).

16

Relatedly, "the mere fact [Mr. Wills] is precluded [by the provisions of 28 U.S.C. § 2255(h)] from filing a second § 2255 petition" discussing the statutory amendments does not demonstrate that the initial remedy provided under § 2255 is inadequate or unavailable. *See Caravalho*, 177 F.3d at 1179. Congress expressly limited the availability of second or successive § 2255 motions to "only certain claims it has deemed particularly important"—those involving either newly discovered evidence strongly suggestive of innocence or new rules of constitutional law made retroactive by the Supreme Court.[8] *Prost*, 636 F.3d at 583–84 (citing 28 U.S.C. § 2255(h)). In so doing, "Congress chose to preclude petitioners from raising . . . statutory innocence claims—among many other kinds of claims—in second or successive § 2255 motions."[9] *Prost*, 636 F.3d at 586. Permitting a second challenge under § 2241 in circumstances not contained in § 2255(h) would render that subsection's limitations "effectively pointless." *Id.*

---

[8]    Mr. Wills does not, and cannot, argue that his claim implicates either exception of 28 U.S.C. § 2255(h).

[9]    Accordingly, insofar as Mr. Wills argues his "actual innocence" based on the 2006 statutory amendments as a basis for § 2241 review, *Prost* counsels that his argument is of no moment. And we repeatedly have followed *Prost*'s logic. *See Hale*, 829 F.3d at 1171 ("[Petitioner's] attempt to bypass § 2255(e) and obtain § 2241 review by labeling his claim one of 'actual innocence' does not change the analysis."); *Dembry*, 796 F. App'x at 974–75 (rejecting petitioner's claim that § 2241 review was warranted based on "actual innocence," as evidenced by the Supreme Court's statutory interpretation decision issued after the petitioner's initial § 2255 application).

17

Although Mr. Wills "suggests there is something unusual about barring a claim that rests on a correct and previously foreclosed" statutory amendment, "the fact is that *many* other provisions of AEDPA limit the ability of prisoners to reap the benefit of unforeseeable but helpful new legal developments." *See id.* at 591. Indeed, in *Prost*, we explained that, in § 2255, Congress "fully intended . . . to bar otherwise meritorious successive petitions" based on "novel statutory interpretations" in successive § 2255 motions. *Id.* at 589. And, under this principle, we rejected a prisoner's argument that he should be able to pursue an actual innocence argument under § 2241 based on a newly available statutory interpretation from the Supreme Court, notwithstanding the fact that the interpretation was not legally viable at the time of his initial § 2255 petition. *Id.*

Likewise, in *Brace v. United States*, 634 F.3d 1167 (10th Cir. 2011), we again rejected the argument that claims of actual innocence based on a new statutory interpretation can be pursued under § 2241. *Id.* at 1170 (observing that *Prost* foreclosed petitioner's argument). Here too, even if the 2006 statutory amendments support Mr. Wills's interpretation, we still are bound to respect Congress's "considered view" that "finality concerns now predominate and preclude relitigation of [Mr. Wills's] criminal judgment." *Prost*, 636 F.3d at 588.

Finally, Mr. Wills points to the Second and Third Circuits' holdings that a petitioner may invoke § 2241 "when the application of § 2255(h)'s bar against a

18

second or successive motion for collateral review would seriously threaten to render the § 2255 remedial process unconstitutional." *Id.* at 593 (citing *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997), and *In re Dorsainvil*, 119 F.3d 245, 248 (3d Cir. 1997)).  Mr. Wills correctly observes that the *Prost* court left open the question of "whether, when, and how the application of § 2255(h)'s limits on second or successive motions might (ever) raise a serious constitutional question." *Id.* at 594.  But he fails to specifically explain how denying access to § 2241 would present constitutional issues in this case, "or even identify what provision of the Constitution he thinks would be offended by the imposition of § 2255(h)'s bar in his case." *Id.*  Accordingly, we decline to consider this argument further as a possible basis for reversing the district court's judgment.[10]  *See Hale*, 829 F.3d at 1176–77 (affirming dismissal of a § 2241

---

[10]     Notably, Mr. Wills's requests appointment of counsel so that the Tenth Circuit can "decide once and for all whether the savings clause of § 2255 may be used to allow § 2241 redress . . . where the claim is one of 'actual innocence,' based on a new statutory change and interpretation, and where failure to allow such redress might raise perilous constitutional questions with regards to the application of § 2255(h)." Aplt.'s Opening Br. at 37.  At the outset, we observe that there is no constitutional right to counsel in post-conviction proceedings. *See Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008).  In rare instances, the Court may appoint counsel for a financially eligible person "seeking relief under section 2241, 2254, or 2255 of title 28," if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).  However, in light of our ultimate disposition of this action, *infra*—affirming the district court's dismissal order—we deem Mr. Wills's request at this juncture to be effectively moot. *See Milton v. Daniels*, 521 F. App'x 664, 669 n.5 (10th Cir. 2013) (unpublished)

(continued...)

petition because the petitioner failed to show why his case "raises serious constitutional concerns").

At bottom, Mr. Wills has not shown that he was unable to test his claim in his initial § 2255 motion. As such, he has failed to prove that § 2255's remedy is inadequate or ineffective to address his claim. Consequently, we uphold the district court's decision that he is barred from pursuing his claim under § 2241. *See, e.g.*, *Bradshaw*, 86 F.3d at 167 (declining to exercise jurisdiction over a petitioner's § 2241 motion because he "provides insufficient evidence that relief is unavailable to him under a properly filed § 2255 motion"); *Brace*, 634 F.3d at 1170 (affirming the district court's dismissal of a petitioner's § 2241 petition

---

[10](...continued)
(affirming the district court's dismissal of § 2241 petition for lack of jurisdiction and denying petitioner's motion for appointment of counsel as moot). Furthermore, the most appropriate setting for Mr. Wills to have first raised the subject of appointment counsel was in the district court; it was there that Mr. Wills was obliged in the first instance to fully articulate his grounds for relief including regarding any constitutional issues that his § 2241 action ostensibly may be implicate. But Mr. Wills does not contend that he moved for appointment of counsel in the district court and was wrongly denied such relief, and therefore he has waived any contention of error to this effect. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). Lastly, as we have seen, Mr. Wills has not even traced the outline of the constitutional question that he suggests is implicated here; consequently, he has not persuaded us—in any event—that the interests of justice would require appointing him counsel. *Cf., e.g.*, *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991) ("In determining whether to appoint counsel, the district court should consider a variety of factors, including the merits of the litigant's claims . . . .").

because he did "not demonstrate[ ] that § 2255 is an inadequate or ineffective remedy").

## C

Finally, notwithstanding our dismissal of the appeal, we must address Mr. Wills's motion for leave to proceed *in forma pauperis*. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997). To proceed *in forma pauperis*, Mr. Wills must demonstrate "a financial inability to pay the required [filing] fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (alteration in original) (quoting *McIntosh*, 115 F.3d at 812). Though a prisoner's argument must not be frivolous, it need not be particularly well-crafted for the prisoner to proceed *in forma pauperis*. *See DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991) (granting a motion for leave to proceed *in forma pauperis* where "[the] appellant can make a rational argument on the law or facts in support of the issues raised on appeal").

Mr. Wills satisfies this *in forma pauperis* standard. He lacks the financial ability to pay the $505 filing fee. In this regard, Mr. Wills has been imprisoned for over twenty years, has an average monthly gross income of $50 per month, and no savings or other assets. Moreover, Mr. Wills's arguments—although erroneous—are expressed in an analytically reasonable manner and apply law to

21

facts.  Consequently, we grant leave to proceed *in forma pauperis*.  *See, e.g.*, *Perko v. United States*, 166 F.3d 1221 (10th Cir. 1999) (unpublished table decision) (granting leave to proceed *in forma pauperis*, notwithstanding the court's denial of petitioner's § 2241 habeas corpus petition because § 2255 provided an adequate and effective remedy); *Moreno v. Cozza-Rhodes*, 514 F. App'x 746, 747 (10th Cir. 2013) (unpublished) (same).

## III

For the foregoing reasons, we **AFFIRM** the district court's order denying Mr. Wills's petition for a writ of habeas corpus under 28 U.S.C. § 2241 and **GRANT** Mr. Wills's motion to proceed *in forma pauperis*.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge